FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

JUN 04 2007

JAMES N. HATTEN, CLERK
By: [signature] Deputy Clerk

| | | |
|---|---|---|
| DONALD CAVIN, | * | |
| | * | |
| Plaintiff, | * | CIVIL ACTION FILE NO. |
| | * | |
| v. | * | |
| | * | |
| GWINNETT COUNTY and | * | |
| SGT. TIMOTHY R. BEINING, | * | **1 : 07 - CV - 1289** |
| | * | |
| Defendants. | * | |

-MHS

## COMPLAINT

COMES NOW the Plaintiff and files this Complaint against the Defendants, showing the Court as follows:

### INTRODUCTION

1.

This is a **42 U.S.C. §1983** action arising from the unreasonable seizure of the Plaintiff's person and property by a law enforcement officer in violation of the Fourth, First and Fourteenth Amendments of the United States Constitution. Plaintiff has also alleged pendant state law claims for false arrest and imprisonment, malicious prosecution, and negligence, as well as violations of the Georgia Constitution.

ORIGINAL

## JURISDICTION AND VENUE

### 2.

This action is brought pursuant to 42 U.S.C. §§1983 and 1988, as well as the Fourteenth Amendment of the United States Constitution. Jurisdiction is founded upon 28 U.S.C. §1331, §1343, and the aforementioned constitutional and statutory provisions. Plaintiffs further invoke the pendant or supplemental jurisdiction of this Court to decide claims arising under state law pursuant to 28 U.S.C. §1367.

### 3.

Venue is proper in this Court pursuant to 28 U.S.C. §1391 and other applicable law because the cause of action arose in Gwinnett County, Georgia, which is situated within the district and divisional boundaries of the Atlanta Division of the Northern District of Georgia, and because one or more of the Defendants is domiciled within said District and Division.

### 4.

All of the parties herein are subject to the jurisdiction of this Court.

## PARTIES

### 5.

Plaintiff Donald Cavin is a citizen of the United States and a resident of Gwinnett County, Georgia who has the capacity to bring this action.

6.

Defendant Gwinnett County is a duly organized and existing county government under the laws of the state of Georgia which has the capacity to sue and be sued, which may be served through the Chairman of its Board of Commissioners, Charles Bannister, at 75 Langley Drive, Lawrenceville, Georgia 30045, and which is subject to the jurisdiction of this Court.

7.

Defendant Sergeant Timothy R. Beining is an individual who was, at all times relevant herein, a police officer employed by Defendant Gwinnett County who acted within the scope of his employment and pursuant to the policies and procedures of the County as established by its Police Department, who may be served by mail pursuant to F.R.C.P. 4(d), and who is subject to the jurisdiction of this Court.

8.

At all times relevant herein, the above-named Defendants acted under color of state law and on behalf of Gwinnett County.

## FACTUAL ALLEGATIONS

9.

At all times relevant herein, Plaintiff Donald Cavin and his wife were self-employed in the real estate business in Gwinnett County.

3

10.

On the afternoon of April 9, 2006, Plaintiff was conducting an Open House for a listed property in the Hamilton Mill subdivision in Gwinnett County when he became aware that someone had taken down the temporary signs which he had posted to direct prospective buyers to the Open House.

11.

As he drove through the subdivision to check on the status of his Open House signs, Plaintiff saw a man that he did not recognize place one of Plaintiff's signs into the back of a sports utility vehicle, get into the vehicle and drive away.

12.

Plaintiff blew his horn at the sports utility vehicle and motioned for the driver to pull over, but the vehicle did not stop.

13.

Plaintiff proceeded to call 911 on his cell phone while following behind the sports utility vehicle; after a few minutes, the vehicle stopped.

14.

Plaintiff told the driver that he had 911 on the phone, and the asked the man who he was and why he was taking the signs.

4

15.

The man responded by flashing a police badge and stating: "You can tell 911 who you are talking to."

16.

After identifying himself as a police officer, the man who had taken the signs— who turned out to be Defendant Beining—told Plaintiff that there was a temporary sign ordinance in Gwinnett County and that anyone was authorized to remove any temporary sign.

17.

Plaintiff gave Defendant Beining one of his business cards, and Defendant Beining gave Plaintiff one of his.

18.

Plaintiff asked Defendant Beining if he could have his signs back, but Defendant Beining refused, saying that they had been "confiscated."

19.

Defendant Beining also stated that the signs had already been "dumped," but Plaintiff knew that this was a false statement because he had seen Beining place one sign into the vehicle, he know that at least two others were missing, and he also knew that Beining had not yet had an opportunity to dispose of all the signs he had taken.

5

20.

Plaintiff wanted the signs back because they were high-quality, A-frame constructions which had cost him and his wife approximately $70 apiece to have made.

21.

Plaintiff subsequently learned that Defendant Beining's wife was a competing realtor, and that other realtor's signs had also been removed from the Hamilton Mill subdivision.

22.

On the way back to the Open House, Plaintiff decided to check out a property which had been listed in the same subdivision by another realtor, and while en route to that listing he drove past a house with a sports utility vehicle parked in front of it-- which caught his eye because it appeared to be the same vehicle that Defendant Beining had been driving, and because it was parked at an unusual angle in the yard--- but he continued to drive past it and stopped in the cul de sac at the end of the street to take a look at the house which was for sale.

23.

After pausing briefly to look at the house, Plaintiff began driving toward the Open House, which was within a quarter-mile away, again passing the house with the sports utility vehicle in front on it.

6

24.

On the way back to the Open House, Plaintiff received a call on his cell phone from Defendant Beining, who told Plaintiff that he was going to arrest him for "stalking."

25.

Plaintiff responded that he was not stalking anyone but was having an Open House in the subdivision.

26.

Defendant Beining then told Plaintiff to come by his office the next day so that Beining could give him a citation.

27.

Plaintiff responded that he would not be able to go to Defendant Beining's office the next day because he had a business function to attend in Marietta, and Beining indicated that he would be the office after 2:00.

28.

After getting off the phone with Defendant Beining, Plaintiff called his wife, who told him that Defendant Beining was the husband of Sheila Beining, whose mother was a close friend of Plaintiff's wife. She also reminded Plaintiff that the two

7

of them, Plaintiff and his wife, had actually attended Defendant Beining's wedding several years earlier, but Plaintiff had not recognized him from that occasion.

29.

After discussing the incident with her husband by phone, Plaintiff's wife became concerned for Plaintiff's safety and decided to call 911 and report her concerns about Defendant Beining.

30.

The dispatcher told her that a police car was on the way to the address where Plaintiff was conducting the Open House, but no car ever came.

31.

However, Plaintiff did receive a call from the dispatcher, and when Plaintiff told her what had happened, the dispatcher told Plaintiff to take the matter up with Defendant Beining's supervisor.

32.

Plaintiff subsequently spoke by telephone with a supervisor named Lt. Taylor, who told Plaintiff that he did not have to go meet Defendant Beining at to the police station the next day, stating that Plaintiff should deal with him rather than with Defendant Beining.

8

33.

Plaintiff told Lt. Taylor that he would come to the police station the day after next (Tuesday, April 11) to file a formal complaint against Defendant Beining; Lt. Taylor told him that Beining's supervisor was a Sgt. Hudson.

34.

The next day (Monday, April 10), Defendant Beining called Plaintiff again and insisted that Plaintiff come in to meet with him.

35.

Plaintiff responded that he was still tied up on business that day and that Lt. Taylor had told him not to deal with Defendant Beining directly, to which Defendant Beining replied, "This will not go well for you."

36.

After that call, Plaintiff phoned the police department and made an appointment to meet Defendant Beining's supervisor, Sgt. Hudson, at 5:00 p.m. on Tuesday, April 11.

37.

On the morning on April 11, Plaintiff's wife sent an email to all realtors with active listings in Hamilton Mill stating that the person who had been removing

9

realtor's signs in the subdivision was a police officer who was married to a Remax agent.

### 38.

At approximately 4:45 on the afternoon of April, knowing that Plaintiff had a 5:00 appointment with Sgt. Hudson and knowing that Plaintiff's wife had sent the email to other realtors that morning, Defendant Beining swore out a warrant for Plaintiff's arrest.

### 39.

When Plaintiff arrived for his 5:00 appointment, Sgt. Hudson told Plaintiff that he had tried to talk Defendant Beining out of bringing the charge, advising him to "let it go" and to not get involved in incidents in his own neighborhood, but that Defendant Beining had insisted on charging the Plaintiff.

### 40.

Sgt. Hutson also told Plaintiff that he would be receiving a "citation" in the mail for the charge that Defendant Beining was bringing against him.

### 41.

Rather than simply issuing a citation, however, Defendant Beining swore out an arrest warrant and caused Plaintiff to be arrested at his home on Easter Monday, April 17, 2006.

42.

Plaintiff's arrest was pursuant to the warrant obtained by Defendant Beining on April 11, 2006, which was based on a false affidavit by Defendant Beining in which he falsely swore that Plaintiff had followed Defendant Beining and placed Defendant Beining under surveillance without consent, for the purpose of harassing and intimidating Defendant Beining, and that said alleged conduct was "knowing, willful and was directed at the victim [Defendant Beining] which caused emotional distress by placing victim in reasonable fear for victim's safety." None of the foregoing was true; rather, it was Defendant Beining who had knowingly and willfully caused emotional distress by placing a citizen (Plaintiff Cavin) in fear of his safety.

43.

On said affidavit in support of his application for arrest warrant, Defendant Beining also falsely swore that Plaintiff had established "a pattern of harassing and intimidating behavior, after being warned that following, tailgating and blowing horn at victim [Defendant Beining] could constitute stalking, accused [Plaintiff] again followed victim home, drove by his house at least 4 times ... which served no legitimate purpose." In fact, Plaintiff had not engaged in the foregoing behavior, nor had Defendant Beining ever warned him that such behavior constituted stalking.

44.

As a result of being arrested without probable cause or arguable probable cause pursuant to the false warrant which had been unlawfully and unreasonably obtained by Defendant Beining, Plaintiff was imprisoned overnight in the Gwinnett County jail until being released on bond.

45.

Defendant Beining willfully and knowingly took steps to prosecute Plaintiff under false charges, and at no time did Defendant Beining request or recommend that said charges be dropped.

46.

On June 19, 2006, the State Court Solicitor filed a notice of intent not to prosecute which effectively dismissed the case.

47.

Subsequently the Plaintiff was successfully in having the charges expunged from his record.

48.

The aforementioned charges and resulting prosecution were ultimately resolved in the Plaintiff's favor.

49.

The Gwinnett County Police Department did not seriously investigate

Plaintiff's complaint against Defendant Beining—completing its "investigation,"

closing its file, and exonerating Defendant Beining in less than thirty (30) days and

before the Solicitor had reviewed and decided to drop the charges that Defendant

Beining had filed against Plaintiff in retaliation for the complaint.

50.

By exonerating Defendant Beining, Defendant Gwinnett County ratified

Beining's conduct and took the official position that Beining's conduct was in

accordance with county policy.

51.

As a direct and proximate result of the false and unfounded stalking charge

brought against him by Defendant Beining, Plaintiff was forced to expend money for a

bail bondsman and a criminal defense attorney, and Plaintiff believes that he suffered

a reduction of income by virtue of his decision to stop doing business in the Hamilton

Mill subdivision as a result of the public humiliation caused by his arrest (which was

coincidentally publicized on the neighborhood's website along with police mugshots

of both Plaintiff and another realtor who was arrested for disorderly conduct after

demanding that Beining return that realtor's own signs).

52.

In addition to the foregoing economic losses, Plaintiff suffered significant emotional distress over having lost his faith in law enforcement officers, having spent a frightening and stressful night in jail, having been embarrassed and humiliated over the circumstances by which his arrest was publicized, and having worried about the extent to which this life-altering experience would affect him financially and professionally.

## THEORIES OF RECOVERY

## COUNT ONE -- FOURTH AMENDMENT

53.

Paragraphs 1 thru 52 are hereby incorporated herein by reference.

54.

The aforementioned misconduct of Defendant Beining in causing Plaintiff to be falsely arrested, falsely imprisoned, and maliciously prosecuted constituted an unreasonable seizure of the Plaintiff's person in violation of the Fourth Amendment of the United States Constitution.

55.

The aforementioned conduct of Defendant Beining in seizing and refusing to return the Plaintiff's real estate Open House signs caused constituted an unreasonable

14

seizure of the Plaintiff's property in violation of the Fourth Amendment of the United States Constitution.

56.

To the extent that said conduct was authorized by county ordinance, said ordinance is unconstitutionally overbroad under the Fourth Amendment either facially or as applied in the circumstances of this case.

## COUNT TWO – FIRST AMENDMENT

57.

Paragraphs 1 thru 56 are hereby incorporated herein by reference.

58.

At all times relevant herein, Plaintiff enjoyed the right to speak freely, to verbally challenge the bizarre conduct of Defendant Beining, and to petition for redress or grievances by filing an official complaint against said Defendant, without fear of arrest or retaliation.

59.

The aforementioned conduct of Defendant Beining in causing Plaintiff to be arrested, imprisoned and prosecuted in retaliation for his speech constitutes a violation of the First Amendment of the United States Constitution.

60.

At all times relevant herein, Plaintiff enjoyed the right to engage in protected commercial speech subject to reasonable time, place and manner restrictions, and Defendant Beining's use of the county sign ordinance as a pretext for removing the Open House signs of realtors in competition with his wife is an unreasonable and arbitrary restriction upon protected commercial speech which violates the Plaintiff's rights under the First Amendment.

61.

To the extent that said conduct was authorized by county ordinance, said ordinance is unconstitutionally overbroad under the Fourth Amendment either facially or as applied in the circumstances of this case.

## COUNT THREE – FOURTEENTH AMENDMENT

62.

Paragraphs 1 thru 61 are hereby incorporated herein by reference.

63.

The aforementioned misconduct of Defendant Beining in abusing the criminal process, falsely charging Plaintiff with a crime, and maliciously causing Plaintiff to be prosecuted without probable cause constituted a deprivation of the Plaintiff's liberty

without due process in violation of the Fourteenth Amendment of the United States Constitution.

64.

The aforementioned conduct of Defendant Beining in seizing and refusing to return the Plaintiff's real estate Open House signs constituted a deprivation of the Plaintiff's property without due process of law in violation of the Fourteenth Amendment of the United States Constitution.

65.

To the extent that said conduct was authorized by county ordinance, said ordinance is unconstitutionally overbroad under the Fourteenth Amendment either facially or as applied in the circumstances of this case.

## COUNT FOUR – COUNTY LIABILITY UNDER 42 U.S.C. §1983

66.

Paragraphs 1 thru 65 are hereby incorporated herein by reference.

67.

At all times relevant herein, Defendant Beining acted pursuant to the customs, policies, and practices of Defendant Gwinnett County, and accordingly, the County is liable under 42 U.S.C. §1983 for any and all federal constitutional violations committed against the Plaintiff by Defendant Beining.

17

68.

Said customs, policies, and practices of Defendant Gwinnett County and/or the deliberate indifference of the County and its policymakers in failing to develop and implement appropriate customs, policies, and practices were the moving force behind the constitutional violations complained of by the Plaintiff.

69.

Specifically, Defendant Beining's conduct at all times relevant herein was pursuant to a duly enacted county ordinance allegedly empowering Gwinnett County police officers to remove and all temporary signs, including but not limited to real estate Open House signs, and Defendant Beining's reliance upon that ordinance as the purported justification for his actions toward the Plaintiff was a moving force behind the constitutional deprivations alleged in Counts One thru Three, with the result being that Defendant Gwinnett County is liable for said federal constitutional deprivations irrespective of the constitutionality of said ordinance either facially or as applied.

70.

Moreover, the actions of Defendant Beining were ratified and endorsed by Defendant Gwinnett County and thus represent official county policy, with the result being that Defendant Gwinnett County is liable for the actions of Defendant Beining to

18

the extent that his actions caused the Plaintiff to be deprived of his federal constitutional rights.

71.

Alternatively, upon information and belief, Defendant Gwinnett County maintained a defective custom, policy or practice of permitting its police officers, including Defendant Beining, to violate written standards of conduct, including but not limited to rules purporting to forbid abuse of their office and abuse of arrest powers, with the result being that the actual custom, policy, or practice of the county was to encourage rather than prohibit such conduct—thereby causing officers such as Defendant Beining to violate the federal constitutional rights of citizens in accordance with such actual custom, policy or practice so as to impute liability to Gwinnett County to the extent that the said actual custom, policy or practice of the Gwinnett County Police Department was the moving force behind said federal constitutional violations.

**COUNT FIVE – PENDANT CLAIMS UNDER GEORGIA CONSTITUION**

72.

Paragraphs 1 thru 71 are hereby incorporated herein by reference.

73.

In addition to violating the federal constitutional right set forth in Count One, the aforementioned acts and omissions of Defendant Beining in falsely arresting, falsely

imprisoning, and maliciously prosecuting Plaintiff, and in unreasonably seizing and refusing to return his property, constitute the unreasonable seizure of his person and property in violation of Art. 1. §1, ¶13 of the Constitution of the State of Georgia.

### 74.

In addition to violating the federal constitutional right set forth in Count Two, the aforementioned acts and omissions of Defendant Beining in abridging the Plaintiff's rights to free speech and in retaliation for the exercise of same constitutes a violation of Art. 1. §1, ¶5 of the Constitution of the State of Georgia.

### 75.

In addition to violating the federal constitutional right set forth in Count Three, the aforementioned acts and omissions of Defendant Beining in abusing the criminal process and in falsely charging and maliciously prosecuting the Plaintiff, as well as in unreasonably seizing and refusing to return his property, constitutes the deprivation of liberty and property without due process of law in violation of Art. 1. §1, ¶1 of the Constitution of the State of Georgia.

### 76.

The aforementioned violations of the Georgia Constitution amount to breaches of public duty by Defendant Beining for which he is individually liable under Georgia law.

## COUNT SIX -- PENDANT STATE TORT CLAIMS

### 77.

Paragraphs 1 thru 76 are hereby incorporated herein by reference.

### 78.

In addition to violating the federal and state constitutional rights set forth in Counts One and Five, the aforementioned acts and omissions of Defendant Beining in causing the Plaintiff to be arrested without probable cause constitutes the tort of false arrest under O.C.G.A. §51-7-1 and other applicable law, for which Defendant Beining is individually liable.

### 79.

In addition to violating the federal and state constitutional rights set forth in Counts One and Five, the aforementioned acts and omissions of Defendant Beining in causing the Plaintiff to be unlawfully detained and deprived of his personal liberty constitutes the tort of false imprisonment under O.C.G.A. §51-7-20 and other applicable law, for which Defendant Beining is individually liable.

### 80.

In addition to violating the federal and state constitutional rights set forth in Counts One, Three and Five, the aforementioned acts and omissions of Defendant Beining in causing the Plaintiff to be prosecuted maliciously and without probable

21

cause constitutes the tort of malicious prosecution under O.C.G.A. §51-7-40 and other applicable law, for which Defendant Beining is individually liable.

81.

Moreover, the aforementioned conduct of Defendant Beining in unreasonably causing Plaintiff to be arrested, imprisoned and prosecuted without probable cause, and in otherwise failing to act with that degree of care which would have been exercised by a reasonable police officer under similar circumstances, constitutes the tort of negligence under Georgia law, for which Defendant Beining is individually liable.

## DAMAGES

82.

Paragraphs 1 thru 81 are hereby incorporated herein by reference.

83.

As a direct and proximate result of the above described conduct of the Defendants, Plaintiff Donald Cavin was unreasonably and unlawfully arrested without probable cause, was falsely and unlawfully imprisoned and deprived of his liberty, his property, and his right to free speech, was forced to endure physical restraint, severe mental pain and suffering including but not limited to embarrassment, public humiliation, impairment of earning capacity, and fear for his wellbeing and financial security which is all expected to continue into the future, and was forced to incur

special damages including but not limited to lost income and necessary expenses for legal representation and bail bond fees, for all of which the Defendants are liable to the Plaintiff in an amount to be proven at trial and determined by the enlightened conscience of fair and impartial jurors.

84.

Defendant Beining and Gwinnett County are both liable for the aforementioned damages under 42 U.S.C. §§ 1983 and 1988, and Defendant Beining is not entitled to qualified immunity under federal law because the law was clearly established in 2006 that a police officer may not give perjured testimony in support of an application for an arrest warrant or otherwise cause a person to be arrested, imprisoned and prosecuted without arguable probable cause.

85.

Defendant Beining is individually liable for the aforementioned damages with respect to the pendant state law claims, and he is not entitled to official immunity under Georgia law because he acted with specific intent to do wrong and to cause harm to the Plaintiff.

86.

The aforementioned misconduct of Defendant Beining arose to such a level of bad faith, willfulness, and reckless disregard for the consequences as to authorize the

23

imposition of punitive damages against him to the extent permitted by federal and state law.

87.

Plaintiff is also entitled to recover reasonable attorney's fees and expenses of litigation with respect to the federal civil rights claims pursuant to 28 U.S.C. §1988.

88.

Alternatively, Plaintiff is entitled to recover reasonable attorney's fees and expenses of litigation with respect to the pendant state law claims pursuant to O.C.G.A. §13-6-11 because Defendant Beining acted in bad faith.

**WHEREFORE**, Plaintiff demands the following:

a)   That this action be tried by a jury;

b)   That judgment be entered in favor of the Plaintiff
     and against the Defendants in an amount to be
     determined by the enlightened conscience of fair and
     impartial jurors to the extent allowed by law;

c)   That the Plaintiff be awarded attorney's fees and
     reasonable expenses of litigation;

d)   That all costs of this action be taxed against the
     Defendants; and,

24

e)      That the Court award any additional or alternative

relief as may be deemed appropriate under the

circumstances.

Respectfully submitted,

CRAIG T. JONES
Ga. Bar No. 399476
Attorney for Plaintiff

EDMOND & JONES, LLP
The Candler Building, Suite 410
127 Peachtree Street, NE
Atlanta, GA 30303
(404) 525-1080

25